PETER CLARE *et al. vs.* JOSEPH T. CURRAN, City Treasurer and Collector of Taxes of the City of Central Falls, AND CITY OF CENTRAL FALLS.

APRIL 5, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

PER CURIAM. This is a bill in equity brought by five persons, who are taxpayers of the City of Central Falls, on behalf of themselves and all others who have a common interest in the subject matter of this suit, against Joseph T. Curran, city treasurer and collector of taxes of the city of Central Falls, and against said city to enjoin said city and collector, on the alleged ground that the whole assessment is illegal, from proceeding to collect the taxes, assessed on the ratable property in said city for the year 1931.

The bill alleges that the tax assessors delegated their authority to assess a tax to certain experts and exercised no independent judgment of their own in placing values upon the different parcels of property; that "they assessed all, or nearly all, of the real properties in Central Falls greatly in excess of their full and fair cash value" and that, by reason of such delegation and overvaluation, the entire assessment is void.

After trial in the Superior Court on bill, answer and proof the trial justice found that the complainants had failed to establish their allegations and entered a decree dismissing the bill. The cause is here on the complainants' appeal from said decree.

The assessors, as required by statute, placed a separate value upon each parcel of land and upon the buildings and improvements thereon.

Acting in conformance with a resolution passed by the city council and approved by the mayor, the city solicitor employed a firm of engineers to assist the assessors in determining the full and fair cash value of the buildings and improvements on the separate parcels of land. Accompanied by one of the assessors, these experts went upon each parcel of land and made detailed memoranda as to

location, dimensions, construction, condition and apparent age of each building thereon. From this data, using a method of computation previously agreed upon by the assessors and experts, and making allowance for depreciation, they determined the sound value of each building. Perhaps most of the original computations were made by the experts, but the assessors worked with them and there is an abundance of evidence that they passed upon and agreed to the results as tabulated upon cards preserved in the office of the assessors. For each parcel a separate card was prepared and the value of the land, as determined by the assessors, was also placed upon the card. The assessment roll was made up from these cards.

The evidence for the complainants consists mainly of testimony as to alleged conversations with the assessors after the work had been completed. A considerable part of this testimony is to the effect that a member of the board of assessors had stated that they copied the figures representing values direct from said cards. Such statements, if made, were probably true. From the evidence of such statements complainants asked the court to draw the inference that the assessors merely copied figures, prepared by experts, without passing any independent judgment upon the values which those figures represented. There is much positive evidence opposed to such an inference. There is an abundance of testimony to the effect that the experts and their assistants were at all times under the direct supervision and control of the board of assessors, and that the figures finally obtained were approved by the board and by them embodied in the assessment roll. The rescript of the trial justice contains a finding as follows: "The testimony further shows that the assessors examined such cards and exercised their judgment not only from an examination of such cards but also from their inspection of the real estate described therein, in fixing the value of such real estate." The finding of said justice that the assessors ex-

ercised their independent judgment in fixing values is amply supported by the evidence.

The proceedings for assessing a tax are *quasi-judicial*, and no one would suggest that a board of assessors can delegate its authority, but assessors have the right, and it is often their duty, to obtain the assistance of experts in arriving at the value of certain classes of property. *Greenough v. Board of Canvassers*, 34 R. I. 84; *Stone v. Norris*, 40 R. I. 477; *Tampa v. Mugge*, 40 Fla. 326; *Snell v. Fort Dodge*, 45 Iowa 564; *Reed v. Cedar Rapids*, 138 Iowa 366; *Jermyn v. Fowler*, 186 Pa. 595; *Pardee v. Schuylkill County*, 276 Pa. 246.

Any individual aggrieved by reason of the valuation placed upon his property "may, within six months after the time appointed for payment of such tax, petition the superior court . . . for relief" and have the question of over-valuation judicially determined—§ 836, General Laws 1923 —provided he brought in to the assessors an account, under oath, as provided in § 828, General Laws 1923.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*Wilson, Lovejoy, Budlong & Clough, Clinton C. Clough,* for complainants.

*J. Howard McGrath, City Solicitor of Central Falls,* for respondents.